v. Currie. Ms. Nichols, you may proceed. Good morning. I'm Paige Nichols, here on behalf of the appellant Clifford Currie. May it please the Court. This trial was really just about one question, and that was whether Mr. Currie was guilty of assault with intent to commit murder, or whether he was guilty of assault with intent to commit murder. The lesser crime attempted voluntary manslaughter. So the only thing that made the difference between those two crimes, verdicts on those two crimes, was the presence or absence of heat of passion. And I'd like to talk this morning about how the prosecutor's statements affected Mr. Currie's defense, his only defense, that he acted in a heat of passion. But first, I just want to direct the Court to the trial judge's statements when she chose to give that jury instruction, because I think it helps me to describe how important this defense was to Mr. Currie. And this was during the instructions conference in Trial Transcript 5, Volume 1, Document 128, pages 12 through 15. And I'm not usually that specific about referring the Court to the record, but I think this is pretty important, because here is where the district court said during the instructions conference that this heat of passion defense is a classic jury question. Because much of the evidence that the jury could reasonably consider as being heat of passion, the jury could also reasonably consider as being malice. That's why it's a jury question. She said also, there is more than sufficient evidence of malice, but there's also more than sufficient evidence of heat of passion. She said, and remember, this is the trial judge who has watched the witnesses and seen the evidence come in, right? There's all kinds of evidence that there was a long-simmering provocation or a long-simmering rage. That obviously doesn't justify attempting to kill someone, but that's not the question. The question is, was there a heat of passion. Finally, she says one more time, after she discusses the evidence, a reasonable jury could find heat of passion. I think they could. At the same time, a reasonable jury could find malice. And I think that's usually the case in heat of passion cases, is that the similar evidence that the government would rely on to argue malice is the same evidence that the defense relies on to argue heat of passion. Counsel, wouldn't the judge have to determine that a reasonable jury could find heat of passion to give the heat of passion instruction? I mean, that's why the instruction was given, wasn't it? Exactly. But I guess I wanted to emphasize that she found, how did she put it, all kinds of evidence and that there was more than sufficient evidence. And I'm pointing this out just because when, and I know I'm going about this maybe a little backwards, because usually I would start with the error and then talk about the harm. But the government argues that the evidence was overwhelming in support of malice, and I think that the judge's statements help us understand that that same evidence supported the heat of passion defense, and that she said there was more than sufficient evidence in support of that offense. And so I just really wanted to point that out at the start. In the context of a jury instruction conference, wasn't the judge focused on whether a particular, whether there was sufficient evidence to give an instruction? Sure. Isn't that what's on the table at that point? Sure, sure. Not what a jury would decide. It's just give the jury this option. Sure, exactly. Okay. And so I just wanted to start there. And mainly because of the government's argument with respect to whether or not the prosecutor's statements affected Mr. Curry's substantial rights. So let me then back up and talk about some of those statements. There's no question the jury instructions were correct. They were correctly instructed. They were, I think they were. I certainly have some problems with them. We haven't raised any specific instructional error claims. Right. They weren't given the way the defense wanted them given. But I think all the pieces of heat of passion were in there. They weren't necessarily in the order that they were requested to be in there. So that's a conditional yes. But we're, what you're asking us is to find that it was plainly erroneous for the court not to find prosecutorial misconduct in the way that she described the jury instructions, the elements of heat of passion to the jury, correct? Right. So there are two categories of misconduct that kind of where the instructions kind of become important. And those are the first two. The one where the prosecutor talked about the order of decision making and said you don't even consider heat of passion until after you've him not guilty of count one essentially. Then there's the other problem of misstating what a heat of passion would provoke. But then that last category. You don't bring any error to us or assert any error based upon the instructions themselves, do you? Not directly. I have argued that the instructions, that some complications with the instructions. Well, I understand. But you don't assert an error in the instructions themselves. Not directly. Directly. Right. That's not before us. Right. Right. But whether the instructions were good enough to. Just make sure that we're not slipping around here on what the assertions of error are. Right. And right. Let me be clear that the claims are purely misconduct claims and references to the instruction really just have to do with whether they were clear enough to cure the misconduct. All right. But you don't assert an error based upon the instructions. And so that's why I'm trying to hold you. Not as a basis for reversal alone. To your brief. Right. Exactly. So if we get rid of the prosecutorial misconduct, there's no stand-alone instructional error. That's right. That's right. Just to be clear on framing the issue, there are nine statements that you're addressing. I think that's right. And is it correct to say that your argument is not that any one of those standing alone is reversible error, but it's the cumulative effect of those nine statements? That's true, although I don't think that – I don't – I did not intend to limit it to cumulative. For instance, there are – some of those I think standing alone could amount to reversal. But since you have – Did you argue that? I didn't know that you argued that. We argued it with respect to the bosses all over this country claim, because that was the one that was actually preserved. So – Okay. Well, I want to get to that next. Okay. Because of the nine, that was the only one that was objected to and is preserved. If we get to looking at the cumulative effect of the nine statements, I just want to make sure, because Judge Timkovich asked you if we're looking at plainly erroneous. Is it a plain error review when we look at all the statements? Yes. I mean, it's a little – I think that ANIA kind of walks through what you do, whether something is preserved and whether it's not preserved. So we have that one piece that was preserved, and you can look at that and decide whether alone it – No, I'm just asking – ANIA, that's good. But if we're taking all of them, if we get to the point where we're taking all of them, is it plain error review? That's all I'm asking. Sure. Yes. Yes. Because none of the other ones were preserved. Yes. So under the general concept that zero plus zero equals zero – Sure. In order to get to cumulative error, we've got to find some error, right? Yes. I mean, you can't just add a lot of non-erroneous comments and say, oops, cumulative error. Right. So give us some of the numerical ones, then, that we should look at. Walk through all of them, but specifically – Right. Well, which ones do you really rely on? I really – What's your best argument? Right. So I asked my moot court judges this question, and everyone gave me a different category. So the first category is – I always – Judge Tepkevich and I were just being asked questions on another panel a few weeks ago, and the students always ask me, what's the best oral argument? And I say to them, well, my advice to you is don't moot your oral argument, moot your brief, because if it's not in the brief, you're not going anywhere. True. So referring to your brief, what should we look at for error? So I think all three categories are equally disturbing. In different ways. The first category of arguments are the arguments that, especially during her rebuttal argument when she said only if you find that he didn't plan for months to kill Lieutenant Blanchard, do you even look at the question of whether there was a heat of passion. If he planned this out ahead, you find him guilty of count one. And that's just wrong. That is not the law. And that is pretty serious because it goes, of course, directly to the only defense Mr. Curry had. So that one is extremely important. It's also of constitutional weight because it lessens the government's burden of proof on the elements of the offense. What do we do in a case like this? Because in other places, the prosecutor seemed to correctly describe the instruction and then the jury was instructed and told to rely on the jury instructions. Why is this a case where the spot of the plain error? Why is this a case where it wasn't adequately cured by either other mumbling around by the prosecutor in closing or, you know, the black and white of the jury instruction? That's usually our gold standard. Because it happens both in her initial closing argument and it happens again in her rebuttal argument. So defense counsel doesn't have a chance to cure it. And as we pointed out about the instructions. Now, so Loftin says, look, this is really hard stuff. We need clarity in these instructions. And it is really hard stuff. So when we have instructions that have elements that don't, I mean, the elements of the offense, because it's an attempt, don't include absence of heat of passion. That comes in a following instruction. Then the definition for heat of passion doesn't come until after the attempted voluntary manslaughter instruction. So even though all the pieces that the jury knew during those instructions, they're just not quite enough to cure this statement by the prosecutor that came towards the end of her rebuttal. How do we know that? How do we, how does this panel decide that the misstatements infected the, you know, the reliability of the jury's verdict? We've got to, you know, you have to show prejudice, you know, the third and fourth prongs of plain air. Sure. How can we be confident that this is, this is the case that meets that demanding standard? Right. So a few things about that. So I have to show that the error affected his substantial rights. And so first I want to remind the court that in the Benford case, this court said that that plain error review is less rigid when it involves constitutional error, which certainly that first claim does. Again, I've asked this court to consider the errors in the aggregate. But also just to remember that it's not just a sufficiency of evidence analysis. And especially when you have this kind of case where the defense is heat of passion. And again, like the judge said, and like happens in most heat of passion cases, the evidence in support of the guilty verdict also supports the guilty verdict on the lesser verdict on heat of passion. And so it's, I think it's actually easier to show an effect on substantial rights in this heat of passion situation just because the same evidence can cut either way. I want to actually, I think I might reserve the rest of my time for argument unless Your Honors would like me to address some of the other errors. Okay. Thank you. Thank you, counsel. You may reserve. Good morning. Carrie Capple for the government. Here the defendant cannot meet his burden to show as to the first two sets of statements by the prosecutor that there was plain error. The defendant would not be able to show plain error here because the statements were not improper. As Your Honor noted, the prosecutor, when she first started her closing argument, she correctly stated the law as to intent to commit murder and explained to the jury and tracked the language of the jury instructions that the jury had to find beyond a reasonable doubt that the government had proved malice and also the absence of heat of passion. Right. But just because the prosecutor says it right once and then goes off on a frolic and detour later, that's still going to have the potential for misleading the jury. Well, I think, Your Honor, I think the second iteration by the prosecutor later in her was less artful. Instead of just saying, if you find him not guilty on count one, then you would move to voluntary manslaughter, which is what she had originally said, which was correct. In her second iteration, then she added the heat of passion and manslaughter there. Is that during rebuttal? That was actually during closing, before she turned to count two. And then during rebuttal, she made a similar misstatement, kind of linking the heat of passion and voluntary manslaughter together. Right. This is where it's end. Only if you find that he didn't plan for months to kill Lieutenant Blanchard, do you even look at the question of whether this was heat of passion. Is that what we're talking about? That was in the rebuttal, yes, Your Honor. Now, that's a misstatement, right? That was a misstatement there, Your Honor. But viewed in the context of the entire trial and the closing arguments, more importantly, there was no intent to mislead the jury here. And in fact — Well, but maybe there was no intent. But the words are the words, and the jury's going to hear them. And the defense didn't get a chance to rebut them. And so why wouldn't the correct analysis be, this is improper. Now let's consider whether it influenced the jury's verdict. Why not just say what it is, which is that it's a misstatement of the law? Your Honor, viewing that statement in isolation, it was a misstatement of the law. But the law tells us that we look at the context of the entire trial in assessing whether a prosecutor committed misconduct. Because we're looking here at she's been elected and committed misconduct. When you say misconduct, misconduct consists of, number one, the improper statement. And then if it is improper, number two, whether it influenced the jury's verdict. And the two of them together, as I understand it, define what is prosecutorial misconduct. Why hasn't the defense, the appellant, satisfied step one? And why isn't the argument now about step two, looking at the whole context? You look at the whole context for both steps. Certainly, Your Honor. And I can turn to why they have not met their burden to the jury. Well, no, I understand. I just want to make sure whether you agree that that's the – I mean, we've got to decide this case. And we're looking to you to help us get there. Is that the way you get there? Well, I think, Your Honor, perhaps the stronger argument is on that second prong, the substantial rights, no effect on substantial rights, because of all the curative measures here. So we have the jury instructions by the district court judge which were correct. There's no dispute as to that, which told the jury that the government had to prove beyond a reasonable doubt malice and that that includes also proving beyond a reasonable doubt the absence of heat of passion. The judge made sure that the jury understood that it was the judge who instructed them on the law and nobody else. And, in fact, the prosecutor herself, both during her closing and rebuttal, and I believe this is at pages 4 and 49, respectively, of Supplemental Record 1, Volume 1, she instructed them that it is the district court who instructs you on the law. And in her rebuttal, she reminded the jury to look to the jury instructions. Keep it. I believe it was keep in mind that the judge instructs you on the law. It seems to me that your answer begs the question to Judge Matheson's question to you. The question to you is, at step two, how do we know that there was no effect on the jury verdict? How do we know that? In many ways. And I'm sorry if I'm taking a roundabout way to get there. I do think part of the prosecutor herself telling the jury it's the judge who instructs you on the law then helps to safeguard the verdict because the jury knows to follow the instructions given. So, but it seems to me that the answer to that is that if a judge instructs the jury on the law and the prosecutor goes up and argues just the opposite, he argues or she argues contrary to the law, you're saying that as long as the instructions were right, there's never going to be prosecutorial misconduct. No. I'm not saying that. That is one of the safeguards, that the instructions. This Court presumes that a jury follows the instructions given by the Court. Right. So that's a very strong safeguard against the prosecutor making misstatements in closing argument. And moreover, the jury is instructed that any statements or arguments by counsel are not evidence. But let me turn to here. Now, I don't get an answer to my question either. I guess I'm a little dense this morning. Well, I thought you were going to start talking about the evidence. I'm about to turn to that, which I probably should have just started with, which is that the evidence here was overwhelming of malice and also the absence of heat of passion. And that was because the evidence showed that months before the defendant attacked Lieutenant Blanchard and set her on fire, months before he had gotten very angry with her in his office, had verbally assaulted her, had physically come at her to the point where she thought she was going to have to call security, and they just had this animus. And four months before the attack, as cell phone records or a search of his phone showed, he had run four different searches or questions asking how quickly somebody would die if their jugular vein were cut. So that was very strong evidence that four months before he attacked her, he had been running searches on how to kill somebody and how quickly they would die. And moreover, even on the day of the attack, he had been in her office for a meeting and they were reviewing a report. She was correcting some mistakes that he had made. He became very upset at her, again, verbally abusive toward her. She asked him to leave the office. And he, at that point, actually invited her to his office, so luring her back to his office, which Lieutenant Blanchard found very suspicious because he never wanted her in the office. Moreover, later when he came back shortly after 5 p.m. to attack her, he had gasoline in a water bottle. He had matches on him. He had a straight-edge razor, which he, after she was on fire and being assisted by other people, he tried to attack her with the straight-edge razor and then a pair of scissors. So all of this evidence together was overwhelming to show that this defendant acted with malice. He had a plan. He carried out the plan. And this was not just a spontaneous rage or fear or passion that overcame him at that moment. And so because of this overwhelming evidence, together with the jury instructions which were correct, and together with the presumption that the jury follows the instructions given by the court, that's how we know, or that's how this court, I submit, can find that the defendant just cannot meet his burden to show a substantial effect on his rights. And that also all of that evidence, the strength of the evidence, also applies to that third set of statements that the defendant argues were improper here. And that was the comment about bosses going up in flames throughout the country. And that was the one statement that the defendant did object to at trial. So there — Do you agree that was improper? No, Your Honor, we don't agree with that. That was a direct counter to the defense argument that to show heat of passion, all that that requires is that for the ordinary person to lose their temper, whereas that is not what the instruction says. The instruction says the ordinary person would have to be so provoked. And so it places the ordinary person in the defendant's shoes, and the provocation and action that that person takes has to be — has to be similar to the action that the defendant took. And so the prosecutor was using a colorful example to demonstrate really the fallacy of defense counsel's argument, which was really submitting to the jury that, you know, any ordinary person would lose their temper. So what — I take it what you're saying then is that as long as it was made in response to defense counsel's argument, it was okay. Well, here, this Court does give wide latitude. I understand. But would you agree that it was otherwise improper? Because it seems like the only reason it isn't improper is that it was a response to something defense counsel said. Well, I think it was in response to what defense counsel was saying, but also trying to explain to the jury, I think, just how preposterous defense counsel's argument was. Well, but you're still — you're still in response mode. But there are cases that say these broad statements of community, appeal, are not — prosecutors shouldn't be making those. Agreed. Agreed. That is what the law says. But this, I guess we come at it from a different position. We don't see this being a statement, a call to action, or an appeal to law and order. This was a response trying to illustrate the ordinary person would not have been so provoked. So she's trying to say when a boss corrects you at work or points out mistakes, tries to help you improve, that's not the kind of provocation that would lead somebody to set their supervisor on fire. If that were true, then that would be happening all over the country. So it's actually almost a different — a different or opposite approach of, you know, having to correct a societal wrong. That societal wrong just didn't exist in this case. And that's how we view what the prosecutor was trying to explain to the jury, that this was not a normal, reasonable reaction. But same here. Even if this court were to find, well, that was not a proper statement, it was improper the government submits it, we can show beyond reasonable doubt that it was harmless. Again, because of the strength of the evidence here, there was no provocation. The only provocation here, if it can even be called provocation, was just a supervisor trying to work with an employee, trying to correct their work, trying to improve their work. So that provocation would not be something that would incite such a passion or fear or so that the government was able to disprove beyond a reasonable doubt that there was a heat of passion in this case. By the way, there was some interesting discussion in both briefs about heat of passion. And one of the arguments the appellant makes is that heat of passion can develop over time. It isn't always some spontaneous reaction. It can build and build and build and then happen. What's your view of that? I don't know that the case law is clear on that effect. I think it's possible, but there still has to be a lack of planning or a lack of malice to commit that crime. So I think maybe hatred or rage can build up over time, but the attack itself, the intent to murder, would still have to be something that happened just in that instant without prior planning so that, for example, in this case, we showed that the defendant brought tools, brought the instruments of his attack to work, which shows that he planned this. He knew he was going to carry out an attack against his boss. So here, even if it were part of heat of passion that it can build up over time, we still showed beyond a reasonable doubt that he planned this and he acted with malice. Unless there are any further questions? Thank you, counsel. Thank you. I have three main points I want to make. The first one is really important, and that is that the government is getting the law wrong even here. Malice is not premeditation. You can have a heat of passion and still have premeditation. So I think it helps to think of it kind of a little bit chronologically. First you have a provocation. Then you form an intent. Most of us can overcome that sense, that bad thought. We all have bad thoughts at some point. But if you have a sufficient provocation and you develop a heat of passion, a loss of control, and commit a bad act, you still might have and just look at the voluntary manslaughter instruction. It's right in there. You still have mens rea. Heat of passion does not destroy mens rea. It destroys your ability to control him, to keep from acting on that mens rea. So that's a really important legal point that I think the government got wrong below, and it's part of the reason that the government's getting the argument wrong up here. I think I understand your argument. And, you know, it seems to me that the rage or passion can build up over time. And, you know, there's the straw that breaks the camel's back type of argument that I think you're making. But on the other hand, if the ordinary person, I mean, it's an objective standard, right, and the person brings the tools for the crime, you know, one thing to, you know, you could even plot a murder and then still be provoked on a separate occasion and be entitled to a heat of passion. But it seems to me that the government is entitled to try to rebut heat of passion by the individual bringing the tools of the crime. Sure, that's evidence. I happened to bring a gun to work that day. Right. Just like Defendant Loftin put a gun in her car. And Defendant Loftin told other people days before she shot her husband in what she claimed was a heat of passion that she might kill her husband. And I think when we talk about prejudice, just look at Loftin. Loftin found it. That's a plain error case. And Loftin found it because just as we've been talking up here, this is a hard, I mean, this is a complex defense. I mean, it's a little confusing to jurors that you can have premeditation and still act in a heat of passion. And so my second point was really to look at Loftin, really, on the plain error, please. And my last point I want to make is that this argument, sure, argue the evidence. Argue there wasn't a heat of passion, there wasn't sufficient provocation under the evidence. But don't argue that you shouldn't find him guilty of or you should find him guilty of count one because of the terrible consequences of finding him not guilty of count one. And that's what the, not just the boss's argument, mind you, but remember in that section of the brief, there are four, as Your Honor pointed out, there are four separate statements, the road rage drivers, the bosses. And this didn't justify the crime. This didn't give him a right to try to kill somebody. He never said it did. And the law doesn't say that either. The law says that heat of passion is a mitigating circumstance. You end up guilty of a very serious crime. And those arguments were misleading and they were scary to the jury. I don't know which way my clock is going. Go ahead, Ms. Fisher. Okay. And the question is not whether this Court would have found the defendant jury without the prosecutor's misconduct, but whether that misconduct affected the juries to the point that they couldn't fairly consider the only defense Mr. Curry had. Thank you. Thank you, counsel. I appreciate it. Thank you. Your excuse in the case is submitted like the prior argument. We really appreciate the Kansas U.S. attorney and FPD's preparation and delivery  Thanks. We're going to take a short break before our third and final case.